UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TRS GROUP, INC., | CASE NO. 2:15-CV-01363 MJP |
| Plaintiff, | ORDER ON PLAINTIFF'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS |
| v. | |
| CIVIL—ENVIRONMENTAL— SURVEY GROUP, INC., et al. | |
| Defendants. | |

THIS MATTER comes before the Court on Plaintiff's Motion for Partial Judgment on the Pleadings.  (Dkt. No. 22.)  Having reviewed the Motion, Defendants' response, (Dkt. No. 23), Plaintiff's reply, (Dkt. No. 24), and the related record, the Court hereby GRANTS the Motion.

## Background

The following facts are alleged in Plaintiff TRS Group, Inc.'s ("TRS") Complaint.  (Dkt. No. 1.)  TRS provides thermal remediation services for contaminated soil and groundwater using various technologies.  (Id. at 2.)  Defendant Civil—Environmental—Survey Group, Inc. ("CES")

1   is an engineering firm that provides a range of services, including remediation for contaminated

2   soil and groundwater.  (Id.)  Defendant Keegan Environmental and Engineering Solutions a/k/a

3   Keegan Engineering ("KEES") is certified through the California Department of General

4   Services as a Service Disabled Veteran Enterprise ("SDVBE") and pursues business

5   opportunities for CES where an SDVBE certification is valuable.  (Id. at 2–3.)

6        Defendant James P. Keegan is the President, Founder, and registered agent of CES,

7   corresponds interchangeably from emails using CES and KEES domain names, and lists the

8   same phone number for both CES and KEES.  (Id. at 3.)

9        In April 2011, TRS entered into a Teaming Agreement ("Agreement") with CES.  (Id. at

10  4.)  Among other things, the Agreement called for CES to "perform marketing and sales services

11  for TRS" including "developing proposal opportunities for projects" in exchange for a

12  commission.  (Id.)

13       The Agreement also contained non-compete and confidentiality clauses.  (Id. at 4–5.)

14  Pursuant to these clauses, CES agreed not to: compete with TRS for at least one year after

15  termination of the Agreement, interfere with TRS's business relationships for two years after the

16  Agreement terminated, or ever "use or disclose to any person for any purpose, other than for the

17  benefit of [CES and TRS], any Confidential Information," including "all nonpublic facts, plans,

18  designs, processes, marketing techniques, trade secrets, discoveries, technology, inventions,

19  research, development, pricing policies or price lists."  (Id.)

20       CES also agreed that its employees and agents providing support to TRS's ERH

21  marketing or project efforts would be required to sign an employee non-disclosure agreement

22  that forbids using, disclosing, or divulging "any trade secrets, confidential information, or any

23  other proprietary data" of CES or its clients, such as TRS.  (Id. at 5–6.)

24

ORDER ON PLAINTIFF'S MOTION FOR
PARTIAL JUDGMENT ON THE PLEADINGS- 2

1    In early 2015, Tetra Tech EC, Inc. ("Tetra Tech") began soliciting proposals for the ERH

2  portion of a remediation project at the NEX Gas Station in the Jackson Park Housing Complex in

3  Bremerton, Washington.  (Id. at 6.)  The Naval Facilities Engineering Command Northwest

4  ("NAVFAC NW") selected Tetra Tech to implement the remedial action at this site.  (Id.)

5    In April 2015, consistent with the Agreement, Mr. Keegan contacted TRS about the Tetra

6  Tech opportunity and the potential to work together with TRS to submit a proposal.  (Id.)  TRS

7  and Defendants then collaborated on a proposal for the Tetra Tech opportunity and discussed

8  confidential strategy, pricing, engineering design, and other confidential aspects of how they

9  would jointly propose to price and accomplish the work.  (Id.)  TRS relied on Mr. Keegan to

10  obtain specific information required by Tetra Tech for the proposal, which was due May 20,

11  2015.  (Id. at 6–7.)  As late as May 14, 2015, Mr. Keegan communicated with TRS about

12  confidential pricing, cost splits, and division of labor in connection with the proposal.  (Id. at 7.)

13    However, while TRS was sharing the above confidential information with Defendants,

14  Mr. Keegan and KEES were also working with a direct TRS competitor, Global Remediation

15  Solutions ("GRS"), on a separate proposal for the Tetra Tech opportunity.  (Id.)  Just before the

16  Tetra Tech deadline (and using confidences TRS shared with Defendants), Keegan/KEES and

17  GRS submitted a joint proposal to Tetra Tech.  (Id.)  TRS submitted proposals to Tetra Tech

18  independently, without Defendants.  (Id.)

19    In the proposal that Mr. Keegan/KEES and GRS submitted to Tetra Tech, they included a

20  statement of qualifications listing their prior ERH experience.  (Id.)  However, of the twenty-two

21  prior ERH projects that they claimed to have completed in their statement of qualifications,

22  twenty were projects that TRS had actually completed.  (Id.)  This proposal, which benefited

23  from TRS's confidential information and Mr. Keegan's years of working with TRS, violated the

24

1    Agreement.  (Id.)  Ultimately, Tetra Tech selected Mr. Keegan/KEES's and GRS's proposal over

2    TRS's proposals.  (Id.)

3        Defendants were aware that submission of the joint bit with GRS would violate the

4    Agreement, and, therefore, attempted to terminate the Agreement for cause just two days before

5    submission of their bid with GRS on the grounds that TRS breached the Agreement three years

6    prior.  (Id.)

7        TRS commenced this suit against Defendants in August 2015, asserting claims arising

8    out of the above events.  (Id. at 8–13.)  In response to TRS's complaint, Defendants filed a First

9    Amended Answer and Counterclaim, (Dkt. No. 11), in which Mr. Keegan and KEES assert, inter

10   alia, a counterclaim against TRS for unfair and deceptive trade practices in violation of the

11   Washington Consumer Protection Act ("CPA").  TRS now moves for partial judgment on the

12   pleadings on Mr. Keegan's and KEES's CPA counterclaim.  (Dkt. No. 22.)  Defendants oppose

13   the Motion.  (Dkt. No. 23.)

14                                **Discussion**

15   **I.     Legal Standard**

16          **A.  Federal Rule of Civil Procedure 12(c)**

17        A party may move for judgment on the pleadings under Rule 12(c) of the Federal Rules

18   of Civil Procedure after the pleadings are closed.  Fed. R. Civ. P. 12(c).  The standard applied on

19   a Rule 12(c) motion is similar to that applied on a Rule 12(b)(6) motion.  See Cafasso, U.S. ex

20   rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1054 n.4 (9th Cir. 2011).  Dismissal under

21   Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of

22   sufficient facts alleged under a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901

23   F.2d 696, 699 (9th Cir. 1990).

24

1    A party's complaint must allege facts to state a claim for relief that is plausible on its

2    face. See Aschroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when

3    the party seeking relief "pleads factual content that allows the court to draw the reasonable

4    inference that the defendant is liable for the misconduct alleged." Id. Although the court must

5    accept as true the complaint's well pled facts, conclusory allegations of law and unwarranted

6    inferences will not defeat a Rule 12(c) motion. Vazquez v. L.A. Cty., 487 F.3d 1246, 1249 (9th

7    Cir. 2007); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

8    **II.    TRS's Motion for Partial Judgment on the Pleadings**

9    To prevail on a CPA claim, a party must plead and prove: (1) an unfair or deceptive act

10   or practice; (2) occurring in trade or commerce; (3) that has a public interest impact; (4) that

11   caused injury; (5) to plaintiff in her business or property. Hangman Ridge Training Stables, Inc.

12   v. Safeco Title Ins. Co., 105 Wn.2d 778, 780 (1986). "When the transaction is a private dispute

13   . . . and not a consumer transaction, it is more difficult to show public interest in the subject

14   matter. There must be a likelihood additional persons have been or will be injured in the same

15   fashion." Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc., 86 Wash. App. 732, 744–45

16   (1997).

17   Here, Mr. Keegan and KEES allege TRS committed unfair and deceptive acts in violation

18   of the CPA by filing this lawsuit against them and by notifying Tetra Tech of the basis for the

19   lawsuit. (Dkt. No. 11 at 18–20.)

20   TRS argues Mr. Keegan and KEES have not adequately pled, and cannot plead, that

21   actions by TRS impact the public interest. (Dkt. No. 22.) Specifically, TRS contends that Mr.

22   Keegan and KEES "have not alleged, even hypothetically, that any other parties have been or are

23   likely to be injured by TRS in the same way that they were injured." (Id. at 9.)

24

1    Defendants argue that they are not required to plead repetition in light of certain 2009

2    amendments to the CPA.  (Dkt. No. 23.)   Defendants also argue they have satisfied the public

3    interest impact element of their CPA claim by alleging TRS's actions interfered with

4    government-funded remediation of environment contamination, wasted public tax money, and

5    falsely disparaged Mr. Keegan's and KEES's reputations.  (Id.)

6    The Court concludes Defendants have not adequately alleged the public interest impact

7    required for a CPA claim.  This is a private dispute between two competitors arising out of the

8    alleged breach of an agreement containing non-compete provisions.  (Dkt. Nos. 1, 11.) The 2009

9    amendments to the CPA did not change the requirement that a party asserting a CPA claim

10    arising out of a private dispute must plead and prove that the conduct at issue has been or is

11    likely to be repeated upon other members of the public.  See e.g. Evergreen Moneysource

12    Mortgage Co. v. Shannon, 167 Wash. App. 242, 260–261 (2012).  Defendants have not pled that

13    any other parties have been or are likely to be injured by TRS in the same way that Defendants

14    were injured. (Dkt. No. 11.)  Defendants cannot satisfy this requirement by alleging third parties

15    (i.e. the public or the government) were somehow harmed by TRS's conduct, or by alleging

16    harm to their own reputations.

17    Defendants ask the Court to grant them leave to amend if the Court finds Defendants

18    were required to plead repetition.  (Dkt. No. 23 at 5.)  However, Defendants have already

19    amended their answer once, and the Court finds further amendment would be futile.

20    Based on the foregoing, the Court GRANTS TRS's Motion for Partial Judgment on the

21    Pleadings as to Mr. Keegan's and KEES's CPA counterclaim, (Dkt. No. 22).

22    //

23    //

24

ORDER ON PLAINTIFF'S MOTION FOR
PARTIAL JUDGMENT ON THE PLEADINGS- 6

1

## <u>Conclusion</u>

2    The Court GRANTS TRS's Motion for Partial Judgment on the Pleadings, (Dkt. No. 22).

3    The clerk is ordered to provide copies of this order to all counsel.

4    Dated this 15th day of August, 2016.

5

6

7

_____
Marsha J. Pechman
8    United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER ON PLAINTIFF'S MOTION FOR
PARTIAL JUDGMENT ON THE PLEADINGS- 7