1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10    TRS GROUP INC,                                CASE NO. C15-1363 MJP

11                      Plaintiff,                  ORDER DENYING DEFENDANTS'
                                                    MOTION FOR PARTIAL
12           v.                                     SUMMARY JUDGMENT

13    CIVIL - ENVIRONMENTAL - SURVEY
      GROUP INC, et al.
14
                        Defendants.
15

16

17        THIS MATTER comes before the Court on Defendant James P. Keegan's and Defendant

    Civil-Environmental-Survey Group, Inc.'s ("CES") Motion for Partial Summary Judgment.
18
    (Dkt. No. 25.)  Having reviewed the Motion, Plaintiff's response, (Dkt. No. 32), Defendants'
19
    reply, (Dkt. No. 38), and the related record, the Court hereby DENIES the Motion.
20
                                    **Background**
21
          Defendant James P. Keegan has been the sole proprietor and operator of KEE Solutions
22
    a/k/a Keegan Environmental Engineering ("KEES") since at least 2007.  (Dkt. No. 25 at 5.)
23
    KEES is a service disabled veteran owned small business ("SDVOSB").  (Id.)  Mr. Keegan has
24

1  also been a shareholder in, one of three directors of, and one of three officers of Defendant

2  Civil—Environmental—Survey Group, Inc. ("CES").  (Id.)

3        In 2007, Plaintiff TRS Group, Inc. ("TRS") entered into a Teaming Agreement with

4  Environmental Remediation Group, Inc. ("ERG"), the predecessor by merger to CES.  (Id. at 2.)

5  In April 2011, TRS and CES entered into a Teaming Agreement signed by Mr. Keegan on behalf

6  of CES as its President.  (Dkt. No. 33-1 at 2–16.)  The Teaming Agreement set forth the terms by

7  which TRS and CES agreed to work together to market Electrical Resistance Heating ("ERH")

8  remediation services.  (Id.)

9        Pursuant to the terms of the 2011 Teaming Agreement, CES agreed to "perform

10  marketing and sales services for TRS" including "developing proposal opportunities for projects

11  that TRS was unaware of and pursuing project opportunities identified by TRS or made known

12  to the public by representatives of potential client."  (Id. at 3.)

13        In turn, TRS agreed that on ERH projects "in California, Arizona, and Nevada, if CES

14  has available personnel with the expertise, experience and other skill sets needed by TRS, the

15  costs are competitive and the personnel fit the timing, scope, and schedule as deemed by TRS in

16  its sole judgment, then TRS will use CES personnel before hiring non-CES personnel or

17  subcontracting any firm to perform project support duties."  (Id. at 6.)

18        The 2011 Teaming Agreement also contained certain restrictive covenants and explicit

19  confidentiality and non-disclosure provisions.  (Id. at 4–7.)  Of relevance in this litigation, the

20  2011 Teaming Agreement required CES employees and agents to sign the CES Non-Disclosure

21  Agreement ("NDA").  (Id. at 7.)

22        In the spring of 2015, Tetra Tech, Inc. ("Tetra Tech"), a Washington-based remediation

23  company that had been selected to implement a remedial action at the Jackson Park Housing

24

ORDER DENYING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT- 2

1   Complex in Bremerton, Washington, began soliciting proposals from potential subcontractors for

2   the ERH portion of the remediation project.  (Dkt. No. 34 at 1–2.)  On or about April 29, 2015,

3   Mr. Keegan contacted TRS about the opportunity to bid for this project.  (Dkt. No. 32 at 5.)  The

4   Parties dispute whether Mr. Keegan contacted TRS as an agent for CES or in his capacity as sole

5   proprietor and operator of KEES.

6        In this litigation, Defendants argue TRS refused to team exclusively with Mr. Keegan,

7   and instead teamed with two other businesses for the Tetra Tech opportunity.  (Dkt. No. 25 at 7.)

8   They further argue that because TRS refused to team exclusively with Mr. Keegan, Mr. Keegan

9   submitted a separate remediation firm, Global Remediation Solutions ("GRS"), as its proposed

10  subcontractor.  (Id.)

11       TRS claims it did inform Mr. Keegan of its intention to submit multiple bids for the Tetra

12  Tech contract, and that Mr. Keegan began working with GRS before he learned TRS planned to

13  submit multiple bids.  (Dkt. No. 32 at 6.)

14       Tetra Tech ultimately selected the proposal by Mr. Keegan and GRS.  (Id. at 7.)

15       TRS commenced this suit on August 26, 2015, asserting claims against Defendants

16  arising out of the Tetra Tech opportunity.  (Dkt. No. 1.)  Of relevance here, TRS asserts breach

17  of restrictive covenant and veil-piercing and alter ego claims against Mr. Keegan and CES.  (Id.

18  at 8–13.)  Mr. Keegan and CES now move for partial summary judgment on these claims, (Dkt.

19  No. 25), arguing, inter alia, that the 2011 Teaming Agreement was not in effect at the time of the

20  events giving rise to this litigation, the restrictive covenants in the 2011 Teaming Agreement do

21  not apply to Mr. Keegan d/b/a  KEES, the NDA does not apply to Mr. Keegan, and that TRS's

22  alter ego and veil-piercing claims are insufficient.  (Id.)  TRS opposes the motion.  (Dkt. No. 32.)

23  //

24

1

**<u>Discussion</u>**

2

**I.    Legal Standard**

3

**A.  Summary Judgment**

4

Summary judgment is proper where "the movant shows that there is no genuine issue as

5

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

6

56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue

7

of fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  In assessing whether a party has met

8

its burden, the underlying evidence must be viewed in the light most favorable to the non-

9

moving party.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

10

**II.    Defendants' Motion for Partial Summary Judgment**

11

**A.  Termination of the Teaming Agreement**

12

Defendants first argue the 2011 Teaming Agreement was automatically terminated in

13

2012, because TRS materially breached the agreement.  (Dkt. No. 25 at 4–5.)  Specifically,

14

Defendants contend TRS breached the 2011 Teaming Agreement by not providing ERG and

15

CES with specified subcontractor preferences in their territory, and by not providing ERG and

16

CES with the rationale for TRS's decision not to use them.  (<u>Id</u>.)  Defendants offer evidence that

17

they provided TRS with notice and an opportunity to cure the breach first in April of 2012 and

18

then again in May 2015.  (Dkt. No. 26 at 2–3.)

19

Section 4.2.2 of the 2011 Teaming Agreement provides:

20

Either party may terminate this Agreement upon the breach or default of either
Party; provided that such breach or default continues unremedied for a period of

21

ten (10) days after the affected party gives written notice of the default or breach
to the offending Party or the same or similar breach or default occurs again within

22

six (6) months of the previously cured breach or default.

23

(Dkt. No. 26-2 at 8.)

24

1   The Court cannot grant partial summary judgment in Defendants' favor on the grounds

2   that the 2011 Teaming Agreement was not in effect in 2015.  TRS offers evidence that between

3   2011 and May 2015, Mr. Keegan and CES did not provide TRS with any official notice that it

4   had breached the 2011 Teaming Agreement and did not take any steps to terminate the

5   agreement.  (Dkt. No. 34 at 2.)  TRS also offers evidence that CES attempted to terminate the

6   2011 Teaming Agreement in May 2015, which contradicts CES's assertion that the agreement

7   was not in effect at that time.  (Dkt. No. 33-4 at 5–6.)  Finally, as TRS points out in its response

8   brief, even if CES effectively terminated the 2011 Teaming Agreement in 2015, the restrictive

9   covenant at issue in this case extends for a period of one year following termination of the

10  agreement.  (Dkt. No. 33-1 at 4.)  Because these disputed facts are relevant to a jury's

11  assessment of whether the 2011 Teaming Agreement was in effect at the time of the events

12  giving rise to TRS's claims, the Court DENIES Defendants' Motion for Partial Summary

13  Judgment on these grounds.

14          **B.  Restrictive Covenant Claims**

15          Defendants argue the Court should grant partial summary judgment in their favor on

16  TRS's restrictive covenant claims because: (1) the restrictive covenants in the 2011 Teaming

17  Agreement do not apply to or bind Mr. Keegan d/b/a KEES; and (2) Section 3.5.1 of the 2011

18  Teaming Agreement and the NDA apply only to Mr. Keegan and are void and invalid.  (Dkt. No.

19  25 at 12–15.)  The Court addresses these arguments in turn.

20          Section 2.4 of the 2011 Teaming Agreement provides:

21          During the term of this Agreement CES agrees that it will not perform ERH
            services other than for the benefit of TRS and will not directly or indirectly
22          market the services of any provider of ERH other than TRS.  Additionally, for one
            (1) year following termination of this Agreement, CES agrees that without the
23          expressed written approval of TRS, CES will not market the services of any
            provider of ERH other than TRS or perform ERH services other than for the
24          benefit of TRS.

(Dkt. No. 26-2 at 4.)  Defendants argue this provision "by its express terms, applies to CES and only to CES."  (Dkt. No. 25 at 12.)  They further contend ". . . in the absence of a valid veil-piercing or alter ego claim, TRS simply has no viable claim or cause of action for violation of the restrictive covenant from Mr. Keegan pursuing the Tetra Tech contract on behalf of himself d/b/a KEE Solutions . . ."  (Id.)  However, as described in further detail infra, Section C, the Court finds issues of material fact exist as to TRS's alter ego and veil-piercing claims.  Therefore, the Court declines to grant partial summary judgment in Defendants' favor on these grounds.

Section 3.5.1 of the 2011 Teaming Agreement provides, in relevant part:

> All ERG CES employees and agents who are to be trained in the marketing or application of ERH by TRS, or who provide support to TRS' ERH marketing or project efforts, will sign the CES Non-Disclosure Agreement in Exhibit 3.

(Dkt. No. 26-2 at 7.)  The NDA, in turn, provides as follows:

> (d) I also agree that for a period of three (3) years after I cease to be employed by Company for any reason, I shall not, directly or indirectly, without the prior written consent of Company, own, manage, operate, join, control be employed by or participate in the ownership, management, control, or operation of, or be connected with, in any way, any business or other endeavor which is engaged as a provider of or training regarding Electrical Resistance Heating (ERH) or any other in situ subsurface heating environmental remediation technologies.

(Id. at 15.)  Defendants argue "[s]ince Mr. Keegan is still employed by CES, Paragraph 4(d) of the CES Employee NDA is not applicable by its express terms and cannot have been violated by Mr. Keegan seeking or obtaining the Tetra Tech contract."  (Dkt. No. 25 at 13.)

In its response brief, (Dkt. No. 32 at 20–21), TRS argues Paragraph 4(d) of the NDA is not at issue in this case, and, instead, points to Paragraphs 2 and 3 of the NDA as the source of its claims:

> 2.   I recognize that the disclosure of confidential information, Employee's involvement in another company that competes with Company or clients, or the

interference by me with clients, employees or customers would cause irreparable harm to Clients and Company.

3. . . . I acknowledge that disclosure of any Company or Client confidential information, or assisting any business or endeavor to directly compete against Company or Client, would give rise to irreparable injury to Company or Client, which injury cannot be adequately compensated for in monetary damages. Accordingly, Company or Client may seek and obtain injunctive relief, in addition to and not in limitation of any other legal or equitable remedies that may be available.

(Dkt. No. 26-2 at 14.)  In their reply brief, Defendants argue Paragraphs 2 and 3 of the Employee Non-Disclosure Agreement "are only acknowledgments that certain conduct would cause irreparable harm, which are merely intended to justify the actual restrictive covenants and to support the availability of injunctive relief."  (Dkt. No. 38 at 2.)  However, Defendants offer no authority or analysis supporting this argument.  (Id.)  On this record, the Court cannot conclude that Paragraphs 2 and 3 of the NDA do not govern the conduct of CES employees during their employment.  Therefore, the Court declines to grant Defendants partial summary judgment on these grounds.

Finally, Defendants argue Paragraph 4(d) of the NDA is unenforceable because post-term employee covenants not to compete are void, invalid and contrary to public policy under California law.  (Dkt. No. 25 at 13–15.)  However, because Paragraph 4(d) is not the source of TRS's claims, the Court declines to reach this argument.  Based on the foregoing, the Court DENIES Defendants' Motion for Partial Summary Judgment as to TRS's restrictive covenant claims.

### C.  Alter-Ego and Veil-Piercing Claims

For a court to pierce the corporate veil, "two separate, essential factors must be established."  Dickens v. Alliance Analytical Labs., LLC, 127 Wn. App. 433, 440 (2005).  "First, the corporate form must be intentionally used to violate or evade a duty."  Id. at 440–41

1   (citations omitted). "Second, the fact finder must establish that disregarding the corporate veil is

2   necessary and required to prevent an unjustified loss to the injured party." Id. at 441.

3        Furthermore, a court may pierce the corporate veil under an "alter ego" theory when "the

4   corporate entity has been disregarded by the principals themselves so that there is such a unity of

5   ownership and interest that the separateness of the corporation has ceased to exist." Grayson v.

6   Nordic Constr., Co., 92 Wn.2d 548, 553 (1979) (citations omitted).

7        To satisfy the first element—intentional use of the corporate form to violate or evade a

8   duty—there must be an abuse of the corporate form. Meisel v. M&N Modern Hydraulic Press

9   Co., 97 Wn.2d 403, 410 (1982). "With regard to the second element, wrongful corporate

10  activities must actually harm the party seeking relief so that the disregard is necessary." Id.

11       Defendants argue the Court should grant partial summary judgment in their favor on

12  TRS's alter ego and veil-piercing claims because there is no unity of ownership or interest

13  between CES and either Mr. Keegan or KEES and because respecting the separate legal and

14  functional identities of CES and Mr. Keegan and KEES would not create or perpetuate any

15  injustice. (Dkt. No. 25 at 15–20.)

16       The Court disagrees and finds there are disputed facts in the record that preclude partial

17  summary judgment in Defendants' favor on TRS's alter ego and veil-piercing claims.  For

18  example, there is evidence in the record that Mr. Keegan is the sole owner of KEES and the

19  President, Treasurer, CFO and the largest stockholder of CES. (Dkt. No. 33-1 at 22.)  In its bid

20  for the Tetra Tech contract, KEES listed CES as part of its business. (Dkt. No. 33-4 at 2.)  There

21  also appears to be overlap between the records of CES and KEES. (See Dkt. No. 33-2 at 10–11.)

22  And, while Defendants make arguments the contrary, (Dkt. No. 38 at 8–12), the Court finds

23  these facts are sufficient to foreclose summary judgment on TRS's alter ego and veil-piercing

24

ORDER DENYING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT- 8

1 claims on the grounds that there is no unity of ownership or interest between CES and either Mr.

2 Keegan or KEES.  And, the Court finds a reasonable jury could find disregarding the corporate

3 veil is necessary in this case to prevent an injustice—i.e. to prevent Mr. Keegan from using

4 KEES to avoid his obligations to TRS under the 2011 Teaming Agreement.

5      Accordingly, the Court DENIES Defendants' Motion for Partial Summary Judgment as

6 to TRS's alter ego and veil-piercing claims.

7                                    **Conclusion**

8      The Court DENIES Defendants' Motion for Partial Summary Judgment, (Dkt. No. 25).

9      The clerk is ordered to provide copies of this order to all counsel.

10     Dated this 18th day of August, 2016.

11

12

13                              _____
                                Marsha J. Pechman
14                              United States District Judge

15

16

17

18

19

20

21

22

23

24

ORDER DENYING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT- 9